# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2975 | **DATE** | 12/10/2002 |
| **CASE TITLE** | | Moore vs. Principi | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, the Court orders the following with respect to the parties' motions in limine: Docket numbers 112-1 and 115-1 are granted without objection; docket numbers 107-1, 109-1 and 111-1 are granted; docket numbers 104-1, 105-1, 106-1, 110-1, 113-1 and 116-1 are granted in part and denied in part; and docket numbers 108-1, 114-1, 117-1 and 118-1 are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC 11 2002 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | |
| | | date mailed notice | |
| OR | courtroom deputy's initials | 02 DEC 10 PM 4:07 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JULIAN J. MOORE, )
)
      Plaintiff, )
)
vs. ) Case No. 00 C 2975
)
ANTHONY J. PRINCIPI, Secretary of )
Veterans Affairs, )
)
      Defendant. )

DOCKETED
DEC 11 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Julian Moore, who is African-American, previously worked for the Department of Veterans Affairs, Veterans Canteen Service. Moore worked as an Assistant Canteen Chief Intern from August 31, 1998 until he was fired ten months later on June 25, 1999. After being fired, Moore sued the Secretary of Veterans Affairs alleging race discrimination and retaliation in violation of Title VII. The purpose of this Memorandum Opinion and Order is to rule on the parties' motions *in limine*.

A.    **Defendant's Motions *In Limine***

    (1)    **Equitable Relief**

The Secretary first moves to bar, in the jury phase of this case, any testimony, evidence or argument relating to the plaintiff's claims for equitable relief, specifically, any evidence relating to his claims for back pay, front pay and lost benefits. The parties have agreed that these issues will be tried to and determined by the Court; the jury will hear and decide only the issues of liability and

compensatory damages. The motion is granted without objection. *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500 (7th Cir. 2002)("Back pay and front pay are equitable remedies . . . and therefore matters for the judge").

### (2) The Probationary Period

The Secretary next moves to exclude any testimony, evidence or argument suggesting that Moore was not, or should not have been, required to serve a one-year probationary period after being hired as a management intern by the Veterans Canteen Service. The Secretary argues that Moore's status as a probationary employee is irrelevant, unduly prejudicial, confusing and misleading. Along similar lines, the Secretary asks the Court to exclude plaintiff's exhibits 14, 58 and 92. Moore correctly notes that the Secretary has made Moore's status as a probationary employee an issue in the case, claiming that he was subject to different rules and standards because he had been with the VCS less than a year. But that does not entitle Moore to advance a claim that he should not have been a probationary employee to begin with. Moore contends that the purportedly discriminatory imposition of a probationary period shows that the reliance on his probationary status by the officials who terminated him is pretextual. But that is, quite simply, a *non sequitur* absent some indication that those same officials knew that the probation was improper -- which Moore does not argue and certainly does not support. For these reasons, evidence tending to show that Moore should not have been put on probation is inadmissible.

### (3) "Isolated" Comments by Ray Tober and Arthur Austermann

The Secretary next moves to exclude any testimony, evidence or argument relating to what it characterizes as "isolated" comments by Ray Tober and Arthur Austermann, two VCS managers.

2

These comments include alleged statements by Tober asserting that Moore "had been hired off the street," "was lucky to have a job," and "might not be managerial material," and Austermann's alleged statement that "as the Controller of the VCS, I'm allowed to do as I see fit." The Secretary argues that, even if made, these comments were racially neutral, and therefore they cannot be relevant to Moore's discrimination and retaliation claims. Alternatively, the Secretary argues that evidence of these comments should be excluded as unduly prejudicial. We reject these arguments.

The "isolated" comments the Secretary seeks to exclude might appear racially neutral on their face. But that does not mean that Tober and Austermann's remarks were not motivated by racial animus. Moore alleges that Tober's and Austermann's statements were made soon after they met Moore in person and learned of his race. To the extent that Moore seeks to show a connection between his race and the hostility shown by his supervisors' comments, evidence of the comments will be relevant to Moore's discrimination claim. Furthermore, Tober's and Austermann's statements do not pose a risk of unfair prejudice. The jury instructions will make clear that defendant can be found liable only if Moore's race made a difference in its decision to terminate him.

### (4) "Lost Future Earnings," "Lost Benefits" and Front Pay

The Secretary asks the Court to bar Moore's claim for "lost future earnings" because Moore never disclosed the claim or any support for it. That appears to be the case. Moore never mentioned lost future earnings in his discovery responses and, although he used the words "lost wages," "lost opportunity" and "underemployment" at his deposition, his testimony could just as easily have suggested that he was seeking front pay; indeed, in light of Moore's discovery responses, it was reasonable for the Secretary to assume that Moore's testimony referred to his front pay claim. Moore argues that lost

3

earning capacity is simply a subset of compensatory damages, which he has always claimed. But Moore never identified that as part of his compensatory damage claims until long after discovery was closed. Defendant would be unfairly prejudiced if Moore were permitted to add this claim now. The motion to exclude evidence relating to Moore's claim for "lost future earnings" is granted.

The motion to exclude evidence relating to Moore's front pay and lost benefits claims is denied, however. In response to discovery requests, Moore told the defendants that he was seeking lost benefits and front pay, and he described how the dollar value of each claim would be calculated. Although it may be true that Moore did not actually put a dollar value on either claim until the Final Pretrial Order, any failure in this regard on Moore's part was harmless because the information necessary to calculate the dollar value of the claims was within the Secretary's control all along. Accordingly, the motion to exclude evidence relating to the lost benefits and front pay claims is denied.

The Secretary also seeks to exclude plaintiff's proposed exhibits 108 - 114 because they lack foundation, are hearsay, are irrelevant, require expert interpretation, are confusing and more prejudicial than probative. The Court is unable to see how these exhibits could be prejudicial. But at this point, the Court is unable to determine how the exhibits will come into play, whether they are relevant or whether Moore will be able to lay a proper foundation. Accordingly, the Court will reserve ruling on these exhibits until trial.

### (5) Claims by Other Employees

The Secretary next moves to bar Moore from introducing any testimony, evidence or argument relating to administrative complaints filed by other employees, including exhibits 79G and 79I. The motion is granted without objection.

4

### (6) Employees Not Similarly Situated to Moore

Additionally, the Secretary seeks to bar any testimony, evidence or argument relating to William Carson, Greg Krezan, Randy Floyd, Douglas Bowers, Rosemary Manuel, Roma Leech, Arlene Eisel, Kim Ingraham, Robert Worthington, Francine Williams, Geraldine Jackson, Sanna Sabha, Mary DeRose, Sharon Almgren and Blanche Harrington – VCS employees who, according to the Secretary, were not similarly situated to Moore (exhibits 11A-11N, 17-44, 48-50, 54-56, 79F and 91). The Secretary does not challenge evidence relating to other VCS management employees who were terminated during their probationary period. For two employees to be similarly situated, they must be substantially similar in their performance, qualifications and conduct, with the same supervisor, same standards and same misconduct. *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). However, employees with different employment records and qualifications may be similarly situated if these factors were not taken into account by the employer in making the decision in question. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

The Secretary first seeks to exclude evidence relating to Carson, Krezan and Floyd, three VCS managers who were disciplined for making racial slurs in the course of their employment. He argues that these employees are not similarly situated to Moore in that they had longer employment tenures and better disciplinary and performance records at the time they made their inappropriate remarks. As noted above, however, these factors are only relevant if Moore's supervisors relied on them to reach their decision to terminate his employment. *Patterson*, 281 F.3d at 680. Though at least one of Moore's supervisors claims to have based his recommendation to terminate Moore in part on his short tenure and alleged behavioral problems (*see* Defendant's Exhibit E, Tober Dep. at pp. 268-69),

5

another of his supervisors, the ultimate decisionmaker in his case, has testified that her decision to terminate Moore was based "98 percent" on his use of the "N word" (*see* Plaintiff's Exhibit B, Loman Dep. at pp. 151-53). Because the effect of Moore's tenure and record on his termination is in question, and because Carson, Krezan and Floyd, like Moore, were disciplined for using racial slurs, evidence relating to the disciplinary sanctions against these three VCS managers is admissible.

The Secretary contends that neither Carson nor Krezan shared supervisors in common with Moore. But the record indicates that Joseph Tober was involved in the disciplinary actions against Carson, Krezan and Moore. Defendant's Exhibit E, Tober Dep. at pp. 330, 334. Further, we are not convinced that the incidents involving Carson and Krezan were too remote in time from Moore's termination to be relevant to his discrimination claim; there is no indication that the VCS's or the supervisors' standards for evaluating this type of misconduct changed over time.

The Secretary next moves to exclude evidence relating to Rosemary Manuel, Roma Leech, Arlene Eisel, Kim Ingraham, Robert Worthington, Francine Williams, Geraldine Jackson, Sanna Sabha, Mary DeRose, Sharon Almgren, and Blanche Harrington. We agree with the Secretary that evidence relating to Leech, Eisel, Ingraham, Sabha, DeRose, Almgren, and Harrington ought to be excluded, as it is undisputed that none of these employees shared supervisors in common with Moore. *See, e.g., Patterson*, 281 F.3d 676 (holding that two employees were not similarly situated where they reported to different supervisors). We do not agree, however, that evidence of the disciplinary actions involving Manuel, Williams, Worthington, and Jackson should be excluded. Like Moore, each of these VCS employees was disciplined for using inappropriate language. *See* Plaintiff's Exhibits 22, 29-34. Moreover, like Moore, each of these employees was disciplined directly by the same supervisor,

6

Bonita Loman. *See id.* Although these employees, unlike Moore, did not hold managerial positions, evidence of their conduct and the disciplinary action taken against them is admissible. As noted above, Loman's deposition testimony arguably suggests that Moore's managerial status was not a factor, or at least not a material factor, in her decision.

Finally, the Secretary argues that evidence related to Douglas Bowers, Moore's replacement at the VCS, ought to be excluded. The Court agrees with Moore that the fact that Moore was replaced by a white employee is relevant. And evidence regarding Bowers' subsequent increases and promotions is admissible on the question of back pay and front pay, which as noted earlier will be tried to the Court. But the latter evidence is not admissible in the jury phase of the case; Moore has not made a persuasive argument that evidence regarding Bowers' performance and progession has any bearing on the issue of whether the VCS terminated Moore because of his race or in retaliation for his complaint of discrimination. Plaintiff's exhibits 11A through 11N and 91 are therefore excluded from the jury phase.

### (7) Statistical Evidence

The Secretary next moves to exclude plaintiff's proposed exhibits 79A, 79G, 79H and 79I, which contain statistical information about various employees at the VCS. The Secretary argues that the data contained in these documents, which were produced by the Secretary to the plaintiff, is irrelevant and unreliable. Because Moore has indicated, however, that he only intends to use these exhibits for impeachment or to refresh the recollection of a witness, the motion is denied as moot. The Court will expect Moore to raise the matter at sidebar before he shows these documents to any witness.

**(8) The EEO Counseling Process**

The Secretary next moves to exclude evidence, including Moore's proposed exhibit 1A, relating to the EEO counseling process Moore went through before filing his administrative complaint. Exhibit 1A is a report by the EEO counselor who worked with Moore. The Secretary contends that the EEO counselor's report improperly records "discussions that occur[red] during negotiations for resolution" of Moore's grievance. *See* EEOC Management Directive 110, p. 2-25 ( The counselor will not report any discussions that occur during negotiations for resolution.")(emphasis in original). He further argues that the report "and any other communications made during the EEO counseling process should be excluded at trial as privileged." Defendant's Motion, 3. We disagree.

First, the Secretary has offered, and the Court could find, no authority to suggest that an EEO counseling privilege exists in this circuit. It goes without saying that *Ah Loo v. Danzig*, No. 99-00882, 5 (D. Haw.), an unpublished opinion from the District of Hawaii which the Secretary cites as persuasive authority, is not binding in this district. The Supreme Court has instructed that recognized evidentiary privileges are to be narrowly construed and new privileges are not to be lightly created. *See, e.g., University of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990). Moreover, the Secretary's reliance on Federal Rule of Evidence 408 is misplaced. Rule 408 only limits the admissibility of statements made in the course of "compromise negotiations." The statements and impressions recorded in the EEO counseling report that Moore seeks to introduce were not made in the course of negotiations. Rather, the report captures Tober's initial discussion with an EEO counselor regarding Moore's complaint. We are similarly not persuaded that the EEOC's policy to promote settlements is in any way jeopardized by admission of Tober's statements. Thus we see no reason to extent privilege

8

to the EEO counselor's report.

We also reject the Secretary's argument that the EEO report is inadmissible hearsay. We agree with Moore that the report qualifies as a business record under Rule 803(6), and that the statements of Tober recorded in the report are statements of a party-opponent admissible under Rule 801(d)(1).

B.  **Plaintiff's Motions *in Limine***

(1)  **Tax Returns**

Moore first asks the Court to exclude defendant's proposed exhibits 76, 77 and 78, as well as any other evidence or testimony concerning Moore's failure to file tax returns or timely tax returns. (Exhibits 76 and 77 are certified copies of Moore's tax returns for the years 1997 and 1998 respectively; exhibit 78 is a certification of lack of record showing that the IRS has no tax returns on file for Moore for 1999 or 2000). Moore argues that this evidence is irrelevant and prejudicial. And the Court agrees. The Secretary argues that the tax returns may be relevant to rebut Moore's claims for lost earnings (including back pay and front pay); he also argues that the returns are relevant to show that Moore's administrative claims of discrimination were baseless. The Court agrees that Moore's tax returns may be relevant on the question of lost earnings, but the date on which they were filed is not relevant. Thus, although the Secretary is free to admit the tax returns on the issue of lost earnings (which will be decided by the Court, not the jury), any reference to the filing dates must be redacted. The Court rejects the notion that the tax returns undermine Moore's discrimination claims; to the extent the Secretary seeks to show that Moore's daughter did not live with him, there are other less-prejudicial ways to make the point, including through Moore's complaint which alleges that Moore

9

asked that any transfers by the VCS keep him within commuting distance of his daughter, who also resided in Ann Arbor. Exhibits 76 and 77 are allowed as explained above; exhibit 78 is excluded.

### (2) Moore's Other Lawsuit, Personal Health Issues and Traffic Violation

Moore next seeks to exclude under Rules 401, 402 and 403 evidence relating to (a) the personal injury lawsuit he filed against the defendant in September 23, 2002; (b) a pre-1996 violation for driving with expired license plates; and (c) various health issues. The Secretary has agreed not to introduce any evidence relating to the license plates violation, so the motion is denied as moot in that respect. With respect to the personal injury suit, the Secretary states that it only seeks to offer the application to proceed *in forma pauperis* that Moore filed in that case. Moore's IFP application is a matter of public record that plainly bears on issues relating to back pay and front pay, and that aspect of the case is going to be tried to the Court, which presumably lessens the document's prejudicial impact. Accordingly, the Secretary may use the IFP application for impeachment purposes in connection with the equitable relief aspect of the case tried to the Court.

With respect to the evidence relating to Moore's health issues, the Secretary argues that, in claiming damages for emotional distress arising out of his termination, Moore has opened the door to the possibility that something other than his job loss could have caused that distress. Though that proposition is certainly true in the abstract, the Secretary has failed to show how the matters involved – an injury Moore suffered in 1990-91; an occasion when Moore experienced burning when urinating and got tested to preclude venereal disease as the cause of his discomfort; and a minor lesion that he has – could have any possible bearing on Moore's emotional distress claim. The evidence has almost no probative value and would be unfairly prejudicial, and it is therefore excluded.

10

### (3) Character Evidence

Moore next moves to exclude evidence relating to other alleged "bad acts." Moore seeks to exclude evidence concerning a letter he wrote to Graebel Moving Company threatening a lawsuit and evidence concerning his alleged attempts to interfere with Douglas Bowers' job performance. He also seeks to exclude evidence relating to run-ins he allegedly had with Harriet Schwable and Thomas Way. With respect to the Graebel letter and Moore's interactions with Bowers, the Court agrees that this evidence should be excluded; all of this happened after Moore was fired, and the evidence is therefore irrelevant regarding the reasons for Moore's termination. Defendant argues somewhat cryptically that the evidence may be admissible for purposes of impeachment, but it has failed to articulate any theory in this regard, and the evidence is too collateral to be probative of Moore's credibility. The Court excludes defendant's proposed exhibit 39 (letter to Graebel), as well as any other evidence relating to the Graebel dispute or Moore's interactions with Bowers.

With respect to the Schwable and Way incidents, Moore's motion *in limine* is denied. The evidence reflects that these incidents were known to at least some of the people responsible for making the decision to terminate Moore and that the behavior Moore allegedly displayed in those incidents may have factored into the termination decision.

### (4) Unemployment Insurance

Moore asks to exclude two exhibits concerning his collection of unemployment benefits: defendant's proposed exhibit 79 is the Department of Employment Security's determination that Moore had been terminated because of a "personality conflict" and was therefore eligible for benefits, and defendant's proposed exhibit 80 is a "payment detail history" showing the unemployment benefits paid

to Moore. The Secretary argues that these exhibits are relevant to Moore's back pay and front pay claims because they show how much Moore received in unemployment compensation and when he first started receiving such payments. This evidence is necessary according to the Secretary because it shows the Court what amount should be deducted from an award of back pay. The Court agrees the evidence is admissible, though only at the remedial phase to be tried before the Court (not the jury), and we reserve the question whether the unemployment benefits should be deducted from any award. We also agree that exhibit 79 is relevant, if only marginally, on Moore's claim that he cannot get another job because the VCS has tarnished his reputation (IDES records reflect a "personality conflict" as the reason for Moore's termination, not the specific matters asserted by VCS).

### (5) Newspaper Articles

Moore next seeks to exclude two articles from the Chicago Tribune discussing an offensive racial slur (defendant's proposed exhibits 22 and 23). The Secretary argues that the articles are relevant to show that the particular slur was the subject of significant public discussion, thereby justifying Moore's termination. But unless the Secretary can show that the people responsible for the decision to fire Moore were aware of these articles – a link the Secretary has neither argued nor supported – they simply have no bearing on this case. And the Secretary certainly does not need newspaper articles to show that the particular slur is commonly viewed as odious. Exhibits 22 and 23 are excluded.

### (6) Dr. Pittman

Moore next moves to preclude the testimony of Dr. Isiah Pittman, one of Moore's treating physicians, based on privilege. The Court agrees with the Secretary that, under the circumstances of this case, Moore has waived the privilege: by claiming emotional pain, suffering, humiliation and mental

12

anguish, Moore elected to make his medical condition a central issue in the case, *see Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999), and he specifically authorized the release and disclosure of his medical records to the United States Attorney's Office, without limiting in any way how the documents could be used. *See Principal Mutual Life Insurance Co. v. Eady*, 889 F.Supp. 1067, 1072 (N.D. Ill. 1995)(the privilege applied to medical records was waived where plaintiff signed an authorization form and placed no limits as to how the documents could be used). The motion to exclude Dr. Pittman is denied.

### (7) The Final Agency Determination

After Loman fired Moore, the Department of Veterans Affairs conducted an internal investigation of Moore's discrimination charges. Ultimately, the agency prepared a report containing, among other things, a conclusion that it had not discriminated against Moore; the Secretary seeks to offer the report at trial (defendant's proposed exhibit 69), and Moore seeks to exclude evidence of the agency's investigation as well as the Final Agency Decision. The report's conclusions are hearsay, which would not be a problem due to Rule 803(8)(C), except that the investigation and report were not undertaken until after Moore was fired, the investigator never held a hearing on Moore's claims, and the Secretary never produced the investigator or her work product, despite a request from Moore – all of which leads the Court to question the reliability and trustworthiness of the report's conclusions and significantly diminishes its probative value. *See Klein v. Vanek*, 86 F. Supp. 2d 812, 820 (N.D. Ill. 2000) (citing *Miller v. Field*, 35 F.3d 1088, 1090 (6th Cir. 1994); Fed. R. Evid. 803, 1972 Advisory Committee Notes). The Court also agrees that the determination would unfairly prejudice the jury by giving the appearance that the ultimate issues to be decided by it had already been decided by another

13

entity; indeed, the Secretary admits that that is precisely the point he hopes to make with the report. According, the Court grants Moore's motion and excludes defendant's proposed exhibit 69, as well as any other evidence of the agency's investigation or determination.

## Conclusion

As explained above, the Court orders the following with respect to the parties' motions *in limine*: Docket Numbers 112-1 and 115-1 are granted without objection; Docket Numbers 107-1, 109-1 and 111-1 are granted; Docket Numbers 104-1, 105-1, 106-1, 110-1, 113-1 and 116-1 are granted in part and denied in part; and Docket Numbers 108-1, 114-1, 117-1 and 118-1 are denied.

Dated: December 10, 2002

*[signature]*
MATTHEW F. KENNELLY
United States District Judge